UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at FRANKFORT

CIVIL ACTION NO. 11-34-GWU

STEPHANIE DENISE LEWIS,                                                          PLAINTIFF,

VS.                                  **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                                    DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of her application for Disability Insurance Benefits (DIB). The appeal is currently before the court on cross-motions for summary judgment.

## APPLICABLE LAW

The Commissioner is required to follow a five-step sequential evaluation process in assessing whether a claimant is disabled.

1. Is the claimant currently engaged in substantial gainful activity? If so, the claimant is not disabled and the claim is denied.

2. If the claimant is not currently engaged in substantial gainful activity, does he have any "severe" impairment or combination of impairments--i.e., any impairments significantly limiting his physical or mental ability to do basic work activities? If not, a finding of non-disability is made and the claim is denied.

3. The third step requires the Commissioner to determine whether the claimant's severe impairment(s) or combination of impairments meets or equals in severity an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of

1

      Impairments).  If so, disability is conclusively presumed and benefits are awarded.

4.    At the fourth step the Commissioner must determine whether the claimant retains the residual functional capacity to perform the physical and mental demands of his past relevant work.  If so, the claimant is not disabled and the claim is denied.  If the plaintiff carries this burden, a prima facie case of disability is established.

5.    If the plaintiff has carried his burden of proof through the first four steps, at the fifth step the burden shifts to the Commissioner to show that the claimant can perform any other substantial gainful activity which exists in the national economy, considering his residual functional capacity, age, education, and past work experience.

20 C.F.R. §§ 404.1520; 416.920; Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984); Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997).

      Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

      In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-

ups.  Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987).  Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

      Additional information concerning the specific steps in the test is in order.

      Step four refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987).  The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983).  However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all.  Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case.  Id. at 1053.

      Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical

3

vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. § 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e);

however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. <u>Id</u>. In such cases, the agency may be required to consult a vocational specialist. <u>Damron v. Secretary</u>, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. <u>Varley v. Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Stephanie Denise Lewis, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of degenerative disc disease of the cervical and lumbar spine, status post a C5-C6 discectomy and fusion in 1999; chronic headaches; and right hip pain. (Tr. 16). Nevertheless, based in part on the testimony of a Vocational Expert (VE), the ALJ determined that Mrs. Lewis retained the residual functional capacity to perform a significant number of jobs existing in the economy, and therefore was not entitled to benefits. (Tr. 20-23). The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ asked the VE whether a person of the plaintiff's age, education, and work experience could perform any jobs if she were limited to lifting and carrying up to 10 pounds occasionally and less than 10 pounds frequently, with the ability to sit, stand, and walk up to six hours each in an eight-

hour day, and also had the following non-exertional restrictions. She: (1) could not climb ladders, ropes, or scaffolds; (2) could occasionally stoop, kneel, crouch, crawl, and climb stairs and ramps; (3) could occasionally use her right arm to work overhead; and (4) could do no work requiring frequent turning of the head, or have any exposure to temperature extremes, excess humidity, concentrated vibration, or industrial hazards. (Tr. 46). The VE responded that there were jobs that such a person could perform at the sedentary level, and proceeded to give the numbers in which they existed in the state and national economies. (Tr. 27).

On appeal, this court must determine whether the administrative decision is supported by substantial evidence, or if there is an error of law. <u>Blakley v. Commissioner of Social Security</u>, 581 F.3d 399, 405 (6th Cir. 2009). There is an additional issue in that the plaintiff's Date Last Insured (DLI) is December 31, 2006 (Tr. 14), meaning that she was required to establish disability prior to this date in order to be eligible for benefits.

Mrs. Lewis alleged disability beginning December 18, 2000 due to chronic neck pain which had led to a cervical fusion. (Tr. 122). She testified that she had given this onset date because it was the last time she performed full-time work. (Tr. 31). She received a Worker's Compensation award and drew payments weekly for eight years, apparently accounting for the delay in her social security disability application. (Tr. 31). Asked about references in the medical records to working part-time at her parents' florist shop (e.g., Tr. 401), Mrs. Lewis testified that she just

minded the store while they were making deliveries and she did not receive any payment (Tr. 32). In any case, she testified that her discectomy and fusion in 1999 had not helped her neck pain, although she had attempted to return to work. (Tr. 35, 40). She still had neck pain, which radiated down her right arm, as well as low back pain radiating down her left leg. (Tr. 41). She was on anti-depressant medications from her family physician, Dr. Michele Welling, which were somewhat helpful, but she still felt she could not deal with "things" on a daily basis. (Tr. 38-39). She had never been to mental health counseling, however. (Tr. 38).

The ALJ concluded that the plaintiff's mental impairments were not severe. (Tr. 17). He explicitly considered the reports of two one-time examining mental health experts, Dr. Thomas Shurling and Dr. Robert Granacher. Dr. Shurling examined the plaintiff on December 20, 2005 and concluded that she had chronic major depressive disorder and a pain disorder, along with a "poor" ability to sustain attention to support repetitive tasks and a poor to absent ability to get along with others in an appropriate manner in a work-like setting. (Tr. 209-10). He felt that she would not be able to meet the quality and production standards of a workplace, and her ability to meet rate requirements, change tasks and pace and exhibit appropriate persistence in the workplace was extremely limited to absent. (Tr. 210).

Dr. Granacher examined Mrs. Lewis on April 24, 2006, and reviewed other records, including Dr. Shurling's report. (Tr. 399). He was critical of Dr. Shurling's report, a factor emphasized by the ALJ. (Tr. 17-18). Dr. Granacher stated that Mrs.

7

11-34  Stephanie Denise Lewis

Lewis claimed that she was depressed but did not act or appear depressed. (Tr. 404). He administered several objective tests including reading comprehension, an IQ test, the Minnesota Multiphasic Personality Inventory-II (MMPI-II) and the Battery for Health Improvement-II (BHI-II). He reported the scores she obtained on the latter two test instruments, but did not interpret them. (Tr. 410-12). He diagnosed a mood disorder currently in remission, and appeared to believe, based on his review of the records, that the plaintiff had only begun to complain of depression two weeks before his examination. (Tr. 414).[1] He felt that she had no mental impairment and had the mental capacity to return to work full-time. (Tr. 414-15).

As the plaintiff points out, there was a third mental status examination, by Dr. Andrew T. Cooley on June 16, 2006. (Tr. 211). Dr. Cooley was not mentioned by the ALJ, and the plaintiff suggests that this is reversible error. However, like the other two evaluators, Dr. Cooley was not a treating source whose opinion would be entitled to special weight. Although Dr. Cooley was quite critical of Dr. Granacher's report (Tr. 224), his own diagnosis was only of "mild" major depression with an estimated Global Assessment of Functioning (GAF) score of 70 to 75 "by individual subjective report." (Tr. 223). A GAF score of 70 reflects only mild symptoms, while a GAF score of 71 to 75 reflects only transient and expectable reactions to psychological stressors. <u>Diagnostic and Statistical Manual of Mental Disorders</u> (4th

---

[1] The office notes of Dr. Welling show that the plaintiff was complaining of depression and mood swings at least five years earlier. (Tr. 363).

Ed.--Text Revision), p. 34.  Dr. Cooley did not describe any specific work-related limitations of function, although he did assign a ten percent impairment for Worker's Compensation rating purposes.  (Tr. 223-24).  Therefore, despite his criticisms of Dr. Granacher, it is not clear to a reviewer that he supplied any specific contrary work restrictions.  For all these reasons, there would be no useful purpose served in remanding the case for additional consideration of the report.  In addition, it appears that all of the relevant mental health evidence was reviewed by the state agency psychologists, Jan Jacobson and Jay Athy, both of whom reported that the plaintiff did not have a severe mental impairment.  (Tr. 555, 615).  Thus, this portion of the administrative decision is supported by substantial evidence.

The plaintiff's other allegation of error is that the ALJ did not consider very severe restrictions assessed by Dr. Welling, her treating family physician.  (Tr. 639-44).  When these restrictions were given to the VE, he responded that they would preclude all of the jobs he cited.  (Tr. 47).  Unfortunately for the plaintiff, Dr. Welling's report was made over two years after the DLI, and it did not specifically "relate back" to the relevant period before December 31, 2006.  In fact, it appears that Dr. Welling indicated that the first date she had examined the plaintiff was February 9, 2007, which is also after the DLI.  (Tr. 639).  Although she clearly had been treating the plaintiff during the relevant period (Tr. 359-63), such a mistake might indicate that Dr. Welling was considering older records.  In any case, none of her older office notes contain any evidence of specific restrictions.  The ALJ's

11-34  Stephanie Denise Lewis

physical limitations are supported by contemporaneous examinations by Dr. Paul V. Forrest (Tr. 196), Dr. James Templin (Tr. 346), Dr. Kenneth Graulich (Tr. 356), and by a state agency reviewing source, Dr. Jorge Baez-Garcia (Tr. 630-36). While Dr. Robert B. Nickerson listed restrictions that were somewhat inconsistent in that they allowed freedom of movement from sitting to standing as needed, they were in other respects also consistent with the hypothetical question. (Tr. 377-78). No treating source listed greater functional restrictions than found by the ALJ which would apply to the relevant period. Therefore, this portion of the administrative decision is also supported by substantial evidence.

The decision will be affirmed.

This the 29th day of March, 2012.

Signed By:
G. Wix Unthank
United States Senior Judge